# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

RECEIVED
JUN 28 2019
U.S. District Court
Middle District of TN

GERALD A. SANFORD SR.      |

        **PLAINTIFF,**      |

**v**      |

**CORECIVIC**      |      CASE NO. _____

**AARON IVEY**      |

        **DEFENDANTS.**      |

---

### *Introduction*

This is a civil rights action filed by Gerald A. Sanford Sr., a *pro se* State Prisoner, under 42 U.S.C. § 1983, for damages and injunctive relief, alleging Breach of Third Party Contract, Excessive Force, Deliberate Indifference, and Confinement in Segregation in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution.

All aforementioned violations imposed, and continue to impose, an "atypical and significant hardship" and the "unnecessary and wanton infliction of pain," ... proscribed by the Eighth Amendment to the United States Constitution.

This action is also brought pursuant to the rights guaranteed by the Fourth and Eighth Amendments to the United States Constitution.

All aforementioned violations imposed an "atypical and significant hardship", Cruel and Unusual Punishment, and the "unnecessary and wanton infliction of pain," ... proscribed by the Eighth Amendment to the United States Constitution.

Rule 17(c)(2)(d), Fed.R.Civ.P., Public Officer's Title and Name, states "A public officer who sues or is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

### *Jurisdiction*

This Honorable Court has jurisdiction pursuant to T.C.A. § 29-20-308(a)(b):

(a) **Suits filed under this chapter may be brought in the county in which such governmental entity is located** or in the county in which the incident occurred from which the cause of action arises.

(b) **A governmental entity operating in more than one (1) county shall be deemed to be located in**

1

**the county where its principal office is found**.

This Court has jurisdiction over Plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331 and 1343.

This Court has supplemental jurisdiction over Plaintiff's State law tort claims under 28 U.S.C § 1367.

Rule 10, Fed.R.Civ.P., allows Plaintiffs to attach exhibits to their Complaints.

Rule 18(a), Fed.R.Civ.P., states "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Plaintiff may add allegations related to allegations in the original complaint under the "same subject matter rule" and "continuing wrong" doctrine. (*Heard v Sheahan*; *Hensley v City of Columbus*).

***Parties***

*Plaintiff*

1.      Gerald A. Sanford Sr., hereinafter ("Plaintiff"), TDOC number 418871, an Inmate from the Tennessee Department of Correction hereinafter ("TDOC"), currently housed under Third Party Contract by CoreCivic at Hardeman County Correctional Facility hereinafter ("HCCF"); 2520 Union Springs Rd.; P.O. Box 549; City of Whiteville; County of Hardeman; State of Tennessee; Zip Code 38075.

*Defendants*

2.      CoreCivic; hereinafter ("Defendant CoreCivic")10 Burton Hills Blvd.; in the City of Nashville; County of Davidson; State of Tennessee 37215, at all times mentioned, is a corporation duly organized and existing under the laws of the United States and the State of Tennessee, with its principal place of business located in City of Nashville, failed to abide by the terms of the Third Party Contract and TDOC policies. Defendant CoreCivic is sued in its official capacity.

3.      Aaron Ivey, hereinafter (" Defendant Ivey") was employed by Defendant CoreCivic at HCCF; 2520 Union Springs Rd.; P.O. Box 549; City of Whiteville; County of Hardeman; State of Tennessee; Zip Code 38075. At all times mentioned was a Correctional Officer at HCCF. He is sued in his individual capacity.

**NARRATION OF FACTS AND CAUSE OF ACTIONS**

4.      On 6/18/18, at 0300, Plaintiff was awaken, via the speaker in the cell, by a female officer so he could report to work in HCCF's kitchen at 0330.

5.      Normally, the Inmate call-out is at 0330.

2

6.	At 0340, Plaintiff had not been released from his cell so he pushed the call button because he wanted to be included on the 0400 count and because he did not want to receive a disciplinary infraction.

7.	When Inmates don't report to the kitchen at their assigned time they commonly receive a disciplinary infraction for "Failure to Report as Scheduled (FRS) (Class C): Failure to be at a designated area at the prescribed time."

8.	If Inmates are not at the Inmate entrance no later than 10 minutes after the morning call-out they are prohibited from attending and being on the 0400 out-count.

9.	If Inmates can not attend or late for the 0400 out-count they can not report until the 0400 count clears which is usually at or around 0515.

10.	Plaintiff pushed the call button to inquire if the call-out had been made.

11.	Plaintiff only heard static as a response.

12.	Plaintiff informed them he could not hear their responses. This repeated several times.

13.	Plaintiff finally told them if they could hear him to open the door. The cell door opened.

14.	Plaintiff exited the cell. While approaching the pod door he used both hands to put on his State issued blue shirt.

15.	When Plaintiff pushed the door open he went to the control booth to inform them he could not hear them.

16.	The officers control booths are located in an elevated, locked central location with complete visual view and communication to the day room and every cell.

17.	Defendant Ivey stated, "Every time I work over here you got a problem."

18.	Confused, Plaintiff told him he did not know him or what he was talking about and he must have him mixed-up with another Inmate.

19.	Defendant Ivey began to verbally abuse Plaintiff with profanity.

20.	Defendant Ivey also threatened Plaintiff stating, "Yo b---h a-- want a problem, you gon' get one today."

21.	Plaintiff remained silent.

22.	The KDEF sally port door buzzed and Plaintiff exited for the kitchen.

23.	While Plaintiff was walking down the hall he saw ERT Turner, the first shift kitchen officer, and ERT Hasnas at the entrance for Inmate kitchen workers.

24.	When Plaintiff got approximately fifty (50) yards down the hall, away from KDEF, he heard a

3

door close behind him.

25. Plaintiff continued to walk until he heard a male shouting obscenities at him.

26. Plaintiff turned around trying to distinguish who the male was due to the hall was half dark and Plaintiff is near-sighted.

27. As the male got closer Plaintiff realized it was Defendant Ivey.

28. Defendant Ivey was coming at such a speed Plaintiff was forced to take a defensive stance because it appeared he was coming to have a physical altercation.

29. When Defendant Ivey was about ten feet from Plaintiff, but still walking, he stated, "I told yo b---h a-- you was gon' have a problem."

30. Plaintiff asked, "Man, what's wrong with you?"

31. Defendant Ivey did not answer, but displayed his CO2.

32. Plaintiff told Defendant Ivey, "Don't spray me!"

33. Defendant Ivey, now approximately four to five feet away, raised his arm and unjustly and unlawfully sprayed Plaintiff with CO2.

34. Plaintiff raised both arms in defense simultaneously turning his head.

35. The CO2 saturated his left forearm.

36. The CO2 also splashed his right forearm arm and the left side of his face and head.

37. After spraying Plaintiff Defendant Ivey simply turned and walked back to KDEF.

38. ERT Turner and ERT Hasnas, witnessing the entire incident, had began approaching the commotion.

39. S/CO Johnson had the count room post for the night which was at the end of the same hall, heard the commotion, also witnessed the incident, and also began approaching the commotion..

40. After witnessing the unlawful and unwarranted spraying, S/CO Johnson began angrily shouting,"What you spray him for?!," at Defendant Ivey.

41. Defendant Ivey never answered. He just kept walking.

42. ERT Hasnas asked Plaintiff was he alright.

43. Plaintiff stated he was not.

44. Plaintiff then heard S/CO Cavo ask, "Who sprayed him and why?"

45. S/CO Johnson declared, "Defendant Ivey, and for nothing."

46. By this time multiple officers were on the scene and expressing their disgust.

47. The entire incident was caught on the institution's camera.

4

48. Plaintiff was escorted to medical by ERTs Turner, Hasnas, and Martin and S/CO Johnson.

49. When Plaintiff reached medical he was evaluated by Nurse Keller.

50. Nurse Keller also filled out and signed an excessive force medical form and had Plaintiff sign it.

51. When Capt. Coleman arrived at the Infirmary he had pictures taken, acquired Plaintiff's name and TDOC number and departed.

52. When he returned he informed Plaintiff he was being placed in Administrative Segregation for "Pending Investigation."

53. Plaintiff arrived at Administrative Segregation at approximately 0430.

54. On 6/19/18, Plaintiff spoke with Capt. Walker while he was doing his rounds in Administrative Segregation. He stated he watched the incident on camera and the incident should not have happened and Plaintiff should not be in Segregation.

55. Later that day, Plaintiff spoke with former Asst. Warden Rogers while he was doing his rounds in Administrative Segregation. He stated he was aware of the incident and had to investigate.

56. The same day, former S/CO P. Turner and former S/CO Beard also told Plaintiff they had watched the incident on camera and was "sickened by what I saw."

57. Later that evening and over 36 hours later while still in Administrative Segregation, Plaintiff was finally allowed to take a shower thus, given an opportunity for decontamination.

58. Plaintiff did not know $CO_2$ was in his hair hence, when he took a shower the $CO_2$ from his hair mixed with the water and entered his eyes severely burning them.

59. This also left his eyes blurred.

60. On 6/20/18, Plaintiff was told the institution's Internal Affairs, Mrs. Gates, wanted to speak with him before he could be released from Segregation.

61. At or around 1230, S/CO Fryer came to Plaintiff's cell and told him he was being released.

62. Plaintiff finally left Administrative Segregation at or around 1730.

63. Plaintiff stayed roughly sixty-one (61) hours in Administrative Segregation under "Pending Investigation" status.

64. On 6/21/18, Plaintiff was told by C/O Barnhill, who was in the control booth with Defendant Ivey the day of the incident, he was attempting to exit the booth while Plaintiff was still in the sally port.

65. Inmates are never allowed and prohibited from being in the sally port while the control booth door is open. Which is why during shift change, 0600 and 1800, all Inmate movement halts

5

until shift change is complete.

66. C/O Barnhill also stated when Defendant Ivey exited the KDEF control booth he was already shaking the can of $CO_2$.

67. On 6/22/18, Plaintiff's arms and side of his face still burned and his left eye's vision was slightly blurred.

68. Plaintiff submitted a sick-call on 6/22/18.

69. During the sick-call visit, Plaintiff was told he was allergic to $CO_2$ and given ointment for the burning and eye drops for his eyes.

70. Plaintiff's extremities continued to burn for over a month. His eyes were also blurred for the same amount of time.

71. Plaintiff later learned when Defendant Ivey attempted to report to work the following day he was refused.

72. Plaintiff also leaned Defendant Ivey was terminated later that same day for his unlawful actions/excessive force.

73. Approximately a week later former employee Lt. Byars informed Plaintiff former HCCF Warden Grady Perry approached him inquiring if he had spoken with Plaintiff.

74. Former Lt. Byars stated former Warden Grady Perry mainly wanted to know if Plaintiff was indicating he intended to sue.

75. On 6/22/18, Plaintiff filed a grievance (#31691-326595) on the matter.

76. On 6/26/18, the response of the supervisor, which was from former Warden Grady Perry, stated, "This matter is under investigation."

77. On 7/9/18, Plaintiff appealed the response of the supervisor.

78. On 7/11/18, Plaintiff had his grievance hearing. In the hearing Plaintiff established he still had issues with his eyes. The discoloration in his skin was also still visible.

79. On 7/12/18, the Grievance Committee's response and reasons were: Due to Defendant Ivey's termination Board has no further recommendations."

80. On 7/13/18, former Warden Grady Perry, checked the "Agrees with Proposed Response" box and signed the grievance.

81. On 7/16/18, Plaintiff appealed that decision.

82. On 7/25/18, the Tennessee Department of Correction's Operations received the grievance. The same day, Assistant Commissioner of Operations, David Sexton, checked the "Concur with

6

Warden" box. He further stated:

The established uniform procedures governing the use of force are outlined in TDOC Policy 506.08. This includes privately managed facilities. The necessary actions have been initiated at HCCF to ensure that staff was in compliance with these procedure.

83. HCCF's actions, terminating Defendant C/O Ivey, ensured they were in compliance, thus, admitting guilt.

### CLAIMS FOR RELIEF

84. The Supreme Court ruled excessive force is violated when the standard applicable to the specific constitutional right allegedly violated, which in most instances will be the Fourth or Eighth Amendment (the main sources of individual protection under the Constitution against physically abusive official conduct);

85. Convicted Prisoners are protected from misuse of force by the Cruel and Unusual Punishments Clause of the Eighth Amendment;

86. Quite apart from any specific provision of the Bill of Rights, application of excessive force, viewed in any context as a deprivation of substantive Due Process, is when the government official's conduct "shocks the conscience;"

87. Force means any physical force directed toward another, either by direct physical contact or by the use of a weapon such as tear gas, chemical mace, a billy club, or a firearm;

88. Excessive force claims are to be analyzed pursuant to the Fourth Amendment's "reasonableness" strictures; that is, Plaintiff must show the Defendant's actions were, under the circumstances, objectively unreasonable. *Davenport v Simmons*, 192 F. Supp. 2d 812, (W.D. Tenn. 2001). *Brown v Lewis*, 779 F.3d 401, 418 (6th Cir. 2015); *Scott v United States*, 436 U.S. 128, 137-139, 56 L.Ed 2d 168, 98 S. Ct 1717 (1978);

89. The "malicious and sadistic" standard applies to the actions of staff who are directly using force;

90. Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . ., the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm. (quoting *Whitley, 475 U.S. at 320-21*). "We will not require inmates to be subjected to the malicious whims of prison guards." *Hudson v McMillian*, 503 U.S. 1, 9, 117 L.Ed. 2d 156, 112 S. Ct. 995 (1992). ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident."). *DeSpain v Uphoff, 264*

F.3d 965 (10th Cir. 2001); *LaShawn Jones et al. v Marlin Gusman et al.* 296 F.R.D. 416 (5th Cir. 2013);

91. Excessive or unnecessary force by police or prison staff violates the Constitution, and may be remedied by damages or injunctive relief;

92. Five factors apply in determining whether a correctional officer used excessive force: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and Inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response.

93. The factors to be considered in evaluating the offensiveness of conduct, include the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether Plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required;

94. The use of chemical agents is governed by the same standards as other uses of force. *Champion v Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004);

95. A basis for an Eighth Amendment claim exists when an officer uses pepper spray without warning on an Inmate who may have questioned his actions but who otherwise poses no threat;

96. Officers may not use chemical agents against a person who poses no risk;

97. Courts have consistently concluded that using pepper spray is excessive force in cases where the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else. *Champion v Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004);

98. The unnecessary use of tear gas or other chemical agents has been held unlawful by a number of Courts;

99. If there is no need for force, the constitution may be violated by relatively small amounts of force, even a push or a shove;

100. Prisoners need not prove a serious or significant injury to establish excessive force;

101. Even if the injuries suffered "were not permanent or severe," a Plaintiff may still recover if the force used was unreasonable and excessive. *Carl M. Smith v Robin Mensinger et al.*, 293 F.3d 641 (3d Cir. 2002);

8

102. The Supreme Court has strongly rejected the idea that *de minimis* injury means *de minimis* force, stating, "Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts. An Inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v Gaddy, 559 U.S. 34, 130 S. Ct 1175, 175 L.Ed 2d 995 (2010)*;

103. To establish malice, Prisoners need not be able to prove directly what was in the officers' mind. Malice is generally inferred from the officers' actions and the circumstances in which they take place;

104. Once chemical agents have been used, Prisoners (including bystanders who have been exposed) must be allowed a reasonable opportunity for decontamination;

105. Every person, including an incarcerated felon, has the right to be free from the fear of offensive bodily contact and to be free from actual offensive bodily contact. Any person who violates either of these rights can be held liable, both civilly and criminally;

106. It has generally been recognized that prison officials are privileged to use force against prisoners in five situations. These situations are: (1) self-defense; (2) defense of third persons; (3) enforcement of prison rules and regulations; (4) prevention of escape; and (5) prevention of crime;

107. Our society places great value on human life and on the right of every person to be free from offensive physical contact by another. Consequently, the use of force by one individual against another is frowned upon. For this reason, force is permissible only when all non-force alternatives have failed;

108. The United States Supreme Court held in *Hudson v McMillian, 503 U.S. 1 (1992)*, that the use of excessive physical force against a Prisoner may constitute cruel and unusual punishment even though the Prisoner does not suffer serious injury;

109. A Correctional Officer's use of force that results in nothing more than de minimis physical injuries can still violate the Eighth Amendment's prohibition on Cruel and Unusual Punishment. *United States v Lavallee, 439 F.3d 670 (10th Cir. 2006)*;

110. Whenever prison officials are accused of using excessive physical force constituting "the unnecessary and wanton infliction of pain" that violates the Cruel and Unusual Punishments Clause;

9

111. The core judicial inquiry set out in *Whitley v Albers, 475 U.S. 312 (1986)*, is whether the force used was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The extension of *Whitley's* application of the "unnecessary and wanton infliction of pain" standard to all allegations of force, is whether the prison disturbance is a riot or a lesser disruption, or worked no innovation;

112. In the excessive force context, such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident;

113. Although the Eighth Amendment does not reach de minimis uses of physical force, provided that such use is not of a sort repugnant to the conscience of mankind, the blows directed at the Prisoner were not de minimis, and the extent of his injuries provided no basis for dismissal of his claim;

114. The extent of such force depends upon the degree of force being used by the Prisoner, the officers' reasonable perception of injury, and the means of resisting the assault. The test of reasonable force is whether the degree of force used is necessary under the facts and circumstances of the particular case.

115. The American Correctional Association has stated unequivocally that "corporal punishment should never be used under any circumstances." (*American Correctional Association, A Manual of Correctional Standards 417 (3d ed. 1966)*. See also *National Advisory Commission on Criminal Justice Standards and Goals, Standard 2.4 (1973), in Appendix*.)

116. In justifying this position, the Association commented: Punishments out of all proportion to the offense, employing inhumane and archaic methods and dictated by brutality coupled with ignorance, incompetence, fear and weakness, are demoralizing both to Prisoners and staff. Staff punishments substantially increase the chances that the Prisoners will continue to be disciplinary problems in the institution and will return to crime after release;

117. The Court should "pay particular attention to the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Kostrzewa v City of Troy, 247 F.3d 633, 639 (6th Cir. 2001)*;

118. TDOC policy 305.03 EMPLOYEE/OFFENDER INTERACTION; purpose is to establish guidelines for employee and offender interaction. The AUTHORITY is T.C.A. § 4-3-603,

10

T.C.A. § 4-3-606, and T.C.A. § 39-16-402;

119. TDOC policy 305.03 (V) POLICY: states, "**Interactions between employees and offenders shall be of a professional nature <u>only</u>. All offenders shall be treated equally in a non-discriminatory manner;**"

120. TDOC policy 305.03 (VI)(A) PROCEDURES: states, "Employees shall conduct themselves in a professional manner when interacting with offenders;"

121. TDOC policy 305.03 (VI)(C) PROCEDURES: states, "Conversation with offenders shall be limited to that necessary as part of the employee's duties;"

122. TDOC policy 502.06 (V) POLICY: states in part, "It is the policy of the TDOC to provide a safe, humane, and appropriately secure environment, free from threats ...;"

123. T.C.A. § 41-1-103, the sworn oath of office, states in part, "I will fully, impartially, and diligently perform all the duties required of me as in the penitentiary … I will, on no occasion, ill treat or abuse any convict under my care, beyond the punishment ordered by law, or the rules and regulations of the institution. …;"

124. Defendant CoreCivic's Code Of Ethics and Business Conduct Facility Employee Supplement (Appendix 3-3BB) item (6) Abusive Treatment, states, "Do not, directly or indirectly (such as through another employee or resident), harass, taunt or otherwise engage in abusive or undue negative treatment of residents;"

125. Defendant CoreCivic's Code Of Ethics and Business Conduct Facility Employee Supplement (appendix 3-3BB) item (13) Respect For Residents Rights, states in relevant part, "Respect resident's constitutional rights;

126. Defendant CoreCivic is under private contract with the Tennessee Department of Correction;

127. One can sue a private contractor for breach of contract, arguing that he is a "third-party beneficiary" of the contract. This is executed because the terms of the contract between the third-party provider and the State weren't fulfilled;

128. Under Tennessee law, the elements of breach of contract are: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of contract. See *Bancorp South Bank, Inc. v Hatchel, 223 S.W.3d 223, 227 (Tenn.Ct.App. 2006)*. "Contract law in Tennessee plainly reflects the public policy allowing competent parties to strike their own bargains." *Ellis v Pauline S. Sprouse Residuary Trust, 280 S.W.3d 806, 814 (Tenn. 2009)*. The Court is not at liberty to make a new contract for the parties

11

who have spoken for themselves. *Id.* The "Courts do not concern themselves with the wisdom or folly of a contract, . . . and will not relieve a party of its contractual obligations simply because the contract later proves to be burdensome or unwise." *Id.* When the parties have reduced their agreement to writing, the law favors enforcing the contract as written, and in the absence of fraud, mistake, or other supervening legal reason, the Court should construe an unambiguous written contract as the Court finds it;

129. T.C.A. § 41-24-101- 41-24-118 outlines and establishes the criteria and requirement of privately-operated prison contractors;

130. In a previous Court response, Defendant CoreCivic stated in relevant part, "... these Defendants [CoreCivic] are not proper parties to such review, as they are employees of CoreCivic, a private corporation under contract" to house inmates in the TDOC's custody, and not the TDOC ..;"

131. Defendant CoreCivic is a private prison contractor, duly licensed and authorized to house Inmates sentenced to the TDOC pursuant to T.C.A. § 41-24-101 et seq. Therefore, Defendant CoreCivic and its employees are subject to the same standards and laws as the under the aforementioned statue in addition to T.C.A. § 29-20-101 et. Seq.;

132. The deliberate Indifference Standard applies to staff members who stand by and do not intervene in an illegal beating, and to claims of inadequate policy, supervision training, or control by supervisors or local governments;

133. The Supreme Court has recently said the Federal Rules do not require heightened pleadings except where the Rules spell out such a requirement and Courts are not free to impose such requirements on their own;

134. Plaintiff's injury and damages was a direct and proximate result of the abusive, careless, reckless, unprofessional and deliberate indifference of the Defendants; without such actions the injuries would not have occurred, and continue to occur, thereby inflicting on Plaintiff the present injury;

135. The injury caused to Plaintiff was committed without any contributory negligence from Plaintiff but solely by the Defendants' actionable negligence who failed to act with reasonable care;

136. The Defendant's actions constitute the tort of negligence under the law of Tennessee since it is defined as "the failure to use such care as a reasonably prudent and careful person would use under similar circumstances (B*lack's Law Dictionary at 930 (8th ed. 1998)*), and it can include a broad range of acts or failures to act that result in injury," thus the Defendants are liable;

12

137. The Defendant's actions are considered the tort of negligence under the law of Tennessee due to without intending to do any wrong, that person does an act or omits to take a precaution that, under circumstances present, he or she, as an ordinarily prudent person, ought reasonably to foresee that such act or omission will thereby expose the interest of another to an unreasonable risk of harm;

138. The Defendant's actions constitute the tort of negligence under the law of Tennessee since their acts violated a duty of care owed to Plaintiff and caused harm that was within the class of reasonably foreseeable hazards that the duty existed to prevent;

139. It is not necessary that Plaintiff prove the Defendants guilty of each separate charge of negligence under the law of Tennessee which is alleged in the Complaint. It will be sufficient to entitle Plaintiff to recover if a fair preponderance of all the evidence that the Defendants was guilty of any one of the acts of negligence, and that the act was a proximate cause of the injury, without any contributory negligence on the part of Plaintiff;

140. The Defendant's actions constitute the tort of Actionable Negligence under the law of Tennessee which is the existence of a duty to protect another against injury, a breach of the duty, and an injury of which the breach was a proximate cause;

141. The Defendant's actions violated the ordinary care or reasonable care observed in the performance of the common-law duty to use care to prevent injury to Plaintiff. Thus, violating the Eighth Amendment to the United States Constitution;

142. The Defendant's actions violated the Eighth Amendment; deliberate indifference standard since Plaintiff demonstrated the Defendants had actual knowledge of an objectively cruel condition and did not respond reasonably to the risk;

143. Defendant CoreCivic's failure to take disciplinary or other action to curb the known pattern of emotional and physical abuse of Plaintiff by the Defendants and its employees constituted deliberate indifference to Plaintiff's safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights;

144. Defendant CoreCivic's failure to take disciplinary or other action to curb the pattern of its employee being abusive and aggressive constituted violation of the First, Fourth and Eighth Amendments to the United States Constitution and Tennessee State law;

145. A Defendant must act under color of State law to be sued. "[G]enerally, a public employee acts under color of State law while acting in his official capacity or while exercising his

13

responsibilities pursuant to State law." *West v Atkins*, *487 U.S. 42, 50, 108 S. Ct. 2250 (1988)*;

146. This is true even if the employee is abusing or exceeding their authority or violating the law. "Misuse of power, possessed by virtue of State law and made possible only because the wrongdoer is clothed with the authority of State law is action take 'under color of State law.'" *Monroe v Pape*, *365 U.S. at 184 (quoting U.S. v Classic*, *313 U.S. 299, 326, 61 S. Ct. 1031 (1941)*;

147. Defendant Ivey acted under the color of State law since he was acting in his official capacity. While acting under the color of State law in his official capacity he was exercising his responsibilities, abusing and/or exceeding his authority, and misusing power possessed by virtue because he was clothed with the authority of and pursuant to State law;

148. People who work in a State or municipal prison, or perform required services for their Prisoners, under private contract generally act under color of State law;

149. Since Defendant CoreCivic is under private contract with the Tennessee Department of Correction all employees' actions are under color of State law;

150. "[G]enerally, a public employee acts under color of State law while acting in his official capacity or while exercising his responsibilities pursuant to State law." *West v Atkins*, *487 U.S. 42, 50, 108 S. Ct. 2250 (1988)*. This is true even if the employee is abusing or exceeding their authority or violating the law. "Misuse of power, possessed by virtue of State law and made possible only because the wrongdoer is clothed with the authority of State law is action take 'under color of State law.'" *Monroe v Pape*, *365 U.S. at 184 (quoting U.S. v Classic*, *313 U.S. 299, 326, 61 S. Ct. 1031 (1941)*;

151. The defense of qualified immunity is not available to employees of a private corporation or other private Defendants. *Richardson v McKnight*, *521 U.S. 399, 412, 117 S. Ct. 2100 (1997)*. That defense would not be available to the private corporation itself anyway, since corporations are treated like city and county governments, which are not entitled to qualified immunity. *Owens v City of Independence*, *445 U.S. 622, 100 S. Ct. 1398 (1980)*;

152. Some Courts have held that punitive damages may be recovered against private corporations, even though they cannot be recovered against municipalities. *Segler v Clark County*, *142 F. Supp. 2d 1264, 1268-69 (D.Nev. 2001)*; See *Woodward v Correctional Medical Services of Illinois, Inc.*, *368 F.3d 917, 930 (7th Cir. 2004)*;

153. Due to the blatant disregard for their actions and the extreme violations of constitutional and

State law and TDOC policies, Plaintiff is entitled to punitive damages;

154. Defendant Ivey's actions were abusive, assaultive and unprofessional and violated TDOC policies 305.03 and 502.06, T.C.A. § 41-1-103, CoreCivic's Code Of Ethics and Business Conduct Facility Employee Supplement and breached the Third Party Contract;

155. Defendant Ivey's actions violated T.C.A. 39-13-101, Assault, which states;

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Violation of T.C.A. 39-13-101, Assault, under:

(A) Subdivision (a)(1) is a Class A misdemeanor, punishable by incarceration and a fine not to exceed fifteen thousand dollars ($15,000);

(B) Subdivision (a)(2) is a Class A misdemeanor; and

(C) Subdivision (a)(3) is a Class B misdemeanor;

156. When it appears that the evidence, viewed in the light most favorable to Plaintiff, will support a reliable inference of wantonness in the infliction of pain, summary judgment is inappropriate for the Defendant;

157. The rule of the common law, as established by the weight of modern authority, imposes liability upon an employer for an assault committed by one of his employees upon another, when the former is in a position of authority and acts within the general scope and line of his employment.

## *REQUESTED RELIEF*

158. That this Honorable Court **ORDER** if the Defendants transfer Plaintiff after the filing of this matter, it shall be deemed retaliation and sanctions be assessed;

159. That this Honorable Court **ORDER** this matter for adjudication on the issues;

160. That this Honorable Court **ORDER** the service of process pursuant to Fed.R.Civ.P. Rule 4;

161. That this Honorable Court **ORDER** the framing of a Scheduling and Planning, Pretrial Conference and other Orders, pursuant to Fed.R.Civ.P. Rule 16;

162. That this Honorable Court **GRANT** In Forma Pauperis status pursuant to Fed.R.Civ.P. Rule 39;

163. That this Honorable Court **GRANT** Plaintiff Discovery pursuant to Fed.R.Civ.P. Rule 26;

15

164. That this Honorable Court **GRANT** an Amended/Supplemental Complaint pursuant to Fed.R.Civ.P. Rule 15, if necessary;

165. That this Honorable Court **GRANT** a Trial in this matter, if necessary;

166. That this Honorable Court **ADJUDGE** the Supreme Court recently said the Federal Rules do not require heightened pleadings except where the Rules spell out such a requirement and Courts are not free to impose such requirements on their own;

167. That this Honorable Court **ADJUDGE** the individual protection against physically abusive official conduct was violated thus, violating the Fourth and Eighth Amendments;

168. That this Honorable Court **ADJUDGE** the Defendants violated the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and multiple TDOC policies;

169. That this Honorable Court **ADJUDGE** Defendant CoreCivic continuing to employ Defendant Ivey when they knew or should have known he was abusive, careless, reckless, unprofessional and deliberate indifferent violated the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Tennessee State law;

170. That this Honorable Court **ADJUDGE** the Defendant's actions violated the ordinary care or reasonable care observed in the performance of the common-law duty to use care to prevent injury to Plaintiff. Thus, violating the Eighth Amendment to the United States Constitution;

171. That this Honorable Court **ADJUDGE** the Defendants abused and exceeded their authority while violating the law since "Misuse of power, possessed by virtue of State law and made possible only because the wrongdoer is clothed with the authority of State law is action taken 'under color of State law'";

172. That this Honorable Court **ADJUDGE** the Defendant's actions violated a "duty of care" owed to Plaintiff which caused harm that was "within the class of reasonably foreseeable hazards that the duty existed to prevent";

173. That this Honorable Court **ADJUDGE** the Defendant's actions were well below what was "reasonable" and "necessary";

174. That this Honorable Court **ADJUDGE** the Defendant's actions, inactions and/or omissions are the proximate cause of Plaintiff's Constitutional and State violations;

175. That this Honorable Court **ADJUDGE** the factual and legal determination is Defendant CoreCivic had constructive notice and any and all immunity is removed including respondeat superior;

16

176. That this Honorable Court **ADJUDGE** the Fourth or Eighth Amendment, the main source of individual protection under the Constitution against physically abusive official conduct, which is also the standard applicable to the specific constitutional right of the Supreme Court rule of excessive force, was violated;

177. That this Honorable Court **ADJUDGE** the excessive force, is viewed in the context as a deprivation of substantive Due Process and all the Defendant's conduct "shocked the conscience";

178. That this Honorable Court **ADJUDGE** direct physical contact, the use of a weapon such as tear gas, chemical mace, a billy club, or a firearm means/defined Force;

179. That this Honorable Court **ADJUDGE** Defendant Ivey's excessive force violated the Fourth Amendment's "reasonableness" strictures and Plaintiff established his actions were, under the circumstances, objectively unreasonable;

180. That this Honorable Court **ADJUDGE** Defendant Ivey's actions were "malicious and sadistic";

181. That this Honorable Court **ADJUDGE** since the force used was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, violating the core judicial inquiry set out in *Whitley v Albers*;

182. That this Honorable Court **ADJUDGE** since no legitimate penological purpose can be inferred from Defendant Ivey's conduct, the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm;

183. That this Honorable Court **ADJUDGE** Defendant Ivey's conduct was excessive and unnecessary, which violated the Constitution, and remedied by damages or injunctive relief;

184. That this Honorable Court **ADJUDGE** Defendant Ivey's conduct violated the five factors in determining whether a correctional officer used excessive force;

185. That this Honorable Court **ADJUDGE** since no single factor is required such as the offensiveness of conduct, the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, whether it unreasonably interfered with an employee's work performance, and the effect on Defendant Ivey's psychological well-being, it is only relevant to determine whether Plaintiff actually found the environment abusive;

186. That this Honorable Court **ADJUDGE** an Eighth Amendment claim exists since Defendant Ivey used pepper spray without warning Plaintiff who questioned his actions but otherwise posed no threat;

17

187. That this Honorable Court **ADJUDGE** using pepper spray is excessive force in cases where Plaintiffs are secured, not acting violently, and there is no threat to the officers or anyone else;

188. That this Honorable Court **ADJUDGE** the unnecessary use of tear gas or other chemical agents is unlawful;

189. That this Honorable Court **ADJUDGE** when there is no need for force, the constitution is violated by relatively small amounts of force, even a push or a shove;

190. That this Honorable Court **ADJUDGE** Plaintiff need not prove a serious or significant injury to establish excessive force;

191. That this Honorable Court **ADJUDGE** although Plaintiff's injuries "were not permanent or severe," since the force used was unreasonable and excessive he still is entitled to recover;

192. That this Honorable Court **ADJUDGE** they concur with the Supreme Court strongly rejecting the idea that *de minimis* injury means *de minimis* force, stating, "Injury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An Inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury";

193. That this Honorable Court **ADJUDGE** the Eighth Amendment was violated despite de minimis uses of physical force since the force was a sort of repugnant to the conscience of mankind thus, the extent of Plaintiff's injuries provides no basis for dismissal of his claims;

194. That this Honorable Court **ADJUDGE** Defendant Ivey violated the United States Supreme Court ruling in *Hudson v McMillian, 503 U.S. 1 (1992)*, since the use of excessive physical force against Plaintiff constituted cruel and unusual punishment even though Plaintiff did not suffer serious injury;

195. That this Honorable Court **ADJUDGE** Defendant Ivey's excessive physical force constituted "the unnecessary and wanton infliction of pain" which violated the Cruel and Unusual Punishments Clause;

196. That this Honorable Court **ADJUDGE** Plaintiff need not prove directly what was in Defendant Ivey's mind to establish malice, malice was inferred from Defendant Ivey's actions and the circumstances in which they took place;

197. That this Honorable Court **ADJUDGE** Plaintiff has the right to be free from the fear of offensive bodily contact and to be free from actual offensive bodily contact. Since Defendant Ivey violated those rights he will be held liable, both civilly and criminally;

198. That this Honorable Court **ADJUDGE** our society places great value on human life and on the right of every person to be free from offensive physical contact by another. For this reason, force is permissible only when all non-force alternatives have failed. Consequently, the use of force by Defendant Ivey against Plaintiff is frowned upon and devalued human life;

199. That this Honorable Court **ADJUDGE** since the force used was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm thus, violating the core judicial inquiry set out in *Whitley v Albers*;

200. That this Honorable Court **ADJUDGE** in the excessive force context, such standards are always violated when prison officials, such as Defendant Ivey, maliciously and sadistically use force to cause harm, whether or not significant injury is evident;

201. That this Honorable Court **ADJUDGE** unequivocally that "corporal punishment should never be used under any circumstances" as the American Correctional Association has stated. Defendant Ivey's actions violated that standard;

202. That this Honorable Court **ADJUDGE** punishments out of all proportion to the offense, employing inhumane and archaic methods and dictated by brutality coupled with ignorance, incompetence, fear and weakness, are demoralizing both to Prisoners and staff. Staff punishments substantially increase the chances that the Prisoners will continue to be disciplinary problems in the institution and will return to crime after release;

203. That this Honorable Court **ADJUDGE** Plaintiff did not pose an immediate threat to the safety of the officers or others, nor was he actively resisting or attempting to evade by flight;

204. That this Honorable Court **ADJUDGE** the Defendant's actions, inactions and/or omissions violated T.C.A. § 41-1-103, their sworn oath of office;

205. That this Honorable Court **ADJUDGE** the Defendants violated multiple sections of TDOC policy 305.03 EMPLOYEE/OFFENDER INTERACTION;

206. That this Honorable Court **ADJUDGE** the Defendants violated multiple sections of TDOC policy 502.06;

207. That this Honorable Court **ADJUDGE** the Defendant's actions, inactions and/or omissions violated Defendant CoreCivic's Code Of Ethics and Business Conduct Facility Employee Supplement (Appendix 3-3BB) item (6) Abusive Treatment;

208. That this Honorable Court **ADJUDGE** the Defendant's actions, inactions and/or omissions violated Defendant CoreCivic's Code Of Ethics and Business Conduct Facility Employee

19

Supplement (appendix 3-3BB) item (13) Respect For Residents Rights;

209. That this Honorable Court **ADJUDGE** Defendant CoreCivic is under private contract with the Tennessee Department of Correction and State of Tennessee thus all employees' actions are under color of State law;

210. That this Honorable Court **ADJUDGE** one can sue a private contractor for breach of contract, arguing that he is a "third-party beneficiary" of the contract. This is executed because the terms of the contract between the third-party provider and the State weren't fulfilled;

211. That this Honorable Court **ADJUDGE** the Defendants violated the elements of breach of contract under Tennessee law;

212. That this Honorable Court **ADJUDGE** the Defendants CoreCivic and Ivey's actions breached the Third Party Contract which imposed an "atypical and significant hardship" and the "unnecessary and wanton infliction of pain," when Defendant Ivey used a chemical spray on Plaintiff and Plaintiff did not pose any form of threat;

213. That this Honorable Court **ADJUDGE** Defendant Ivey assaulted and used Excessive Force against Plaintiff by spraying him with OC2 producing skin burns and blurred vision lasting several weeks was deliberate indifference and imposed an "atypical and significant hardship" and the "unnecessary and wanton infliction of pain," violating the Eighth Amendment to the United States Constitution;

214. That this Honorable Court **ADJUDGE** Defendant CoreCivic's actions breached the Third Party Contract and displayed Deliberate Indifference, which imposed an "atypical and significant hardship" and the "unnecessary and wanton infliction of pain."

215. That this Honorable Court **ADJUDGE** people who work in a State or municipal prison, or perform required services for their Prisoners, under private contract generally act under color of State law;

216. That this Honorable Court **ADJUDGE** the Defendant's actions, inactions and/or omissions violated T.C.A. § 41-24-101- 41-24-118, which outlines and establishes the criteria and requirements of privately-operated prison contractors;

217. That this Honorable Court **ADJUDGE** Defendant CoreCivic stated in a previous Court response, "... these Defendants [CoreCivic] are not proper parties to such review, as they are employees of CoreCivic, "a private corporation under contract" to house inmates in the TDOC's custody, and not the TDOC ...";

.

20

218. That this Honorable Court **ADJUDGE** Defendant CoreCivic and its employees are subject to the same standards and laws as the under the aforementioned statue in addition to T.C.A. § 29-20-101 et. seq;

219. That this Honorable Court **ADJUDGE** the Deliberate Indifference Standard applies to staff members who stand by and do not intervene in an illegal beating, and to claims of inadequate policy, supervision training, or control by supervisors or local governments;

220. That this Honorable Court **ADJUDGE** Plaintiff's injury and damages was a direct and proximate result of the abusive, careless, reckless, unprofessional and deliberate indifference of the Defendants; without such actions the injuries would not have occurred;

221. That this Honorable Court **ADJUDGE** The injury caused to Plaintiff was committed without any contributory negligence from Plaintiff but solely by the Defendants' actionable negligence who failed to act with reasonable care;

222. That this Honorable Court **ADJUDGE** the Defendant's actions constitute the tort of negligence under the law of Tennessee since it is defined as "the failure to use such care as a reasonably prudent and careful person would use under similar circumstances and it can include a broad range of acts or failures to act that result in injury," thus the Defendants are liable;

223. That this Honorable Court **ADJUDGE** the Defendant's actions are considered the tort of negligence under the law of Tennessee due to without intending to do any wrong, that person does an act or omits to take a precaution that, under circumstances present, he or she, as an ordinarily prudent person, ought reasonably to foresee that such act or omission will thereby expose the interest of another to an unreasonable risk of harm;

224. That this Honorable Court **ADJUDGE** the Defendant's actions constitute the tort of Actionable Negligence under the law of Tennessee which is the existence of a duty to protect another against injury, a breach of the duty, and an injury of which the breach was a proximate cause;

225. That this Honorable Court **ADJUDGE** the Defendant's actions violated the Eighth Amendment, deliberate indifference standard, since Plaintiff demonstrated the Defendants had actual knowledge of an objectively cruel condition and did not respond reasonably to the risk;

226. That this Honorable Court **ADJUDGE** Defendant CoreCivic's failure to take disciplinary or other action to curb the known pattern of emotional and physical abuse by the Defendants and its employees constituted deliberate indifference to Plaintiff's safety and contributed to and proximately caused the above-described violation of Eighth Amendment rights;

21

227. That this Honorable Court **ADJUDGE** the Defendants acted under color of State law to be sued;

228. That this Honorable Court **ADJUDGE** Defendant Ivey acted under the color of State law since he was acting in his official capacity and while in his official capacity he was exercising his responsibilities, abusing and/or exceeding his authority, and misusing power possessed by virtue because he was clothed with the authority of and pursuant to State law;

229. That this Honorable Court **ADJUDGE** the rule of the common law, as established by the weight of modern authority, imposes liability upon an employer for an assault committed by one of his employees upon another, when the former is in a position of authority and acts within the general scope and line of his employment;

230. That this Honorable Court **ADJUDGE** the defense of qualified immunity is not available to employees of a private corporation or other private Defendants since corporations are treated like city and county governments, which are not entitled to qualified immunity;

231. That this Honorable Court **ADJUDGE** Courts have held that punitive damages may be recovered against private corporations;

232. That this Honorable Court **ADJUDGE** due to the blatant disregard for constitutional and State law and TDOC policies and the Defendants extreme violations and actions, Plaintiff is entitled to punitive damages;

233. That this Honorable Court **ADJUDGE** Defendant Ivey's actions were abusive, assaultive and unprofessional;

234. That this Honorable Court **ADJUDGE** Defendant Ivey's actions violated multiple sections of T.C.A. 39-13-101 and should punished accordingly;

235. That this Honorable Court **ADJUDGE** the First Amendment forbids Prison officials from unconstitutionally retaliating against Prisoners with false allegations and other measures;

236. That this Honorable Court **ADJUDGE** grievances are confidential and protected and employees are prohibited from alerting Inmates about the filing of grievances and from discussing Inmate's grievances with or around Inmates;

237. That this Honorable Court **ADJUDGE** it appears since the evidence will be viewed in the light most favorable to Plaintiff, which will support a reliable inference of wantonness in the infliction of pain, summary judgment is inappropriate for the Defendants;

238. That this Honorable Court **ADJUDGE** Plaintiff has proved his case and provided undisputed

material facts of law, thus establishing his burden of proof required to prevail;

239.     That this Honorable Court **ORDER** and **GRANT** all requested relief.

## RELIEF

### I. Compensatory Damages:

1.  $2,500 against Defendant CoreCivic;
2.  $2,500 against Defendant Ivey.

### II. Punitive Damages:

1.  $5,000 against Defendant CoreCivic;
2.  $5,500 against Defendant Ivey.

### III. Other Relief:

A.     **ORDER** all costs associated with the filing of this Complaint be assessed to the Defendants;

B.     **ORDER** Plaintiff is to be free from all retaliatory acts, incidents, and treatments.  This includes any acts, incidents, and treatments that can be deemed as such;

C.     **ORDER** reasonable attorney fee(s) pursuant to T.C.A. § 29-10-104; and

D.     **GRANT** Plaintiff's requested **DAMAGES** and other general relief deemed necessary by the Honorable Court.

**WHEREFORE**, Plaintiff prays this matter is properly and jurisdictionally competent to be entertained by this Honorable Court.  Furthermore, Plaintiff prays this Honorable Court **GRANTS** Plaintiff's **RELIEF** to the ends of justice.

It is so prayed.

[1]I certify, declare, state, and verify under the penalty of perjury that the foregoing is true and correct and has been forwarded by first-class mail, prepaid postage, to Keith Throckmorton; Clerk of Court; 801 Broadway, Room 800; Nashville, TN 37203.
Executed on this 17th day of June 2019.

*Gerald A. Sanford Sr.*
Gerald A. Sanford Sr. #418871

---

1 In accord with 28 U.S.C §1746 and 18 U.S.C. § 1621

Case 3:19-cv-00546   Document 1   Filed 06/28/19   Page 23 of 25 PageID #: 23

Harold O. Sanford Jr. #419891
HCCF
P.O. Box 549
Whiteville, TN 38075

RECEIVED
JUN 28 2019
US DISTRICT COURT
MID DIST TENN

RECEIVED
CCA/HCCF
JUL 17 '19

Keith Throckmorton
801 Broadway Rm. 800 US Office.
Nashville, TN 37203

"Privileged"